UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Christopher Kean,
     Plaintiff

     v.                         Case No. 14-cv-428-SM
                                Opinion No. 2016 DNH 022
City of Manchester;
Manchester Police Department;
Chief David J. Mara; and
Officer Kelly L. McKenney,
     Defendants


**O R D E R**


In September of 2012, plaintiff, Christopher Kean, was arrested and charged with impersonating a police officer, in violation of N.H. Revised Statutes Annotated ("RSA") 104:28-a. He was subsequently acquitted of that charge.  Kean then filed this suit against the arresting officer, Chief of Police David Mara, the Manchester Police Department, and the City of Manchester, seeking compensatory and punitive damages, as well as attorney's fees, for alleged violations of his First and Fourth Amendment rights.  He also advances various state common law tort claims.  Finally, he seeks injunctive relief, in the form of an order compelling defendants to return a police-style jacket that was seized from him.


By order dated March 30, 2015, the court granted defendants' motion for judgment on the pleadings as to counts one, three,

five, and eight of Kean's complaint.  Defendants now move for summary judgment on the remaining claims.  Plaintiff objects.

### Standard of Review

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the nonmoving party and resolv[e] all reasonable inferences in that party's favor."  Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).  See also Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011).  Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

## Background

Viewed in the light most favorable to Kean, as they must be at this stage, the relevant facts are as follows.[1]  Kean is an avid collector of police memorabilia.  (Obj. to Summary Judgment, Exhibit D ("Kean Aff.")¶ 2.)  In 2012, a former Manchester police officer gave Kean a Manchester Police Department ("MPD" or "Department") jacket.  (Id. at ¶ 3.)  The jacket, which was like those issued by the MPD from 1995 to 1999 to officers for wear in colder weather, is navy blue with a fur collar, silver buttons and an official Manchester Police Department patch on the left shoulder.  (Obj. to Summary Judgment, Exhibit A ("Biron Dep.") 21:15-18.)  Kean does not contest the fact that the same MPD patch is currently in use by the Department.

On September 4, 2012, Kean was wearing the jacket as he walked from his home to a local convenience store.  (Kean Aff. ¶ 4.)  Along with the jacket, which was unbuttoned, he wore jeans, a t-shirt bearing the name of his company, and work boots.[2]  (Kean Aff. ¶ 6.)  As Kean walked past the Kelley Street

---

[1]    Kean's version of the facts differs somewhat from the New Hampshire Supreme Court's recitation in State v. Kean, 122 A.3d 982, 983 (N.H. 2015).

[2]    In September 2012, the MPD standard issue uniform consisted of a navy blue shirt with the MPD patch affixed to the left shoulder and "MPD" embroidered on the collar, a silver name tag and badge, a black leather duty belt with silver buttons, navy blue pants with a stripe down the side, and black shoes.

Police Substation, Officer Christopher Biron saw him wearing the jacket and mistook him for a member of the MPD.  (Mot. for Summary Judgment, Exhibit A ("Biron Aff.") ¶ 4.)  After he determined that Kean was not a member of the Department, Biron approached Kean and asked him why he was wearing the jacket. (Biron Dep. 23:9-10.)  Kean responded that he collected police memorabilia and that he had been given the jacket by a former customer. (Kean Aff. ¶ 8.)  He told Biron that he displayed his police memorabilia by wearing it.  (Id.)

Biron then explained that because Kean was wearing the jacket, Biron had mistaken him for a member of the MPD.  (Biron Dep. 24:14-18; see also Kean Aff. ¶ 7.)  Officer Biron told Kean that, while his possession of the jacket was not problematic, Kean could be mistaken for a member of the MPD while wearing it in public.  That, said Officer Biron, could expose him to risk of danger.  (Kean Aff. ¶ 7.; see also Biron Dep. 24:1-18)  Biron also told Kean that, if he continued to wear the jacket, he could be arrested for false personation of an officer.  (Biron Dep. 25:3-9.)

---

(Biron Dep. at 11:3-16.)  The standard issue jacket was a navy blue zip-up jacket, with an embroidered badge on the left breast, embroidered name tag on  the right breast and the MPD patch on the left shoulder.  (Id. at 12:1-10.)

Upon returning home, Kean spoke with his lawyer, who advised him that wearing the jacket in public did not constitute a criminal offense because, to violate the false personation statute, Kean would have to intend to be recognized as a police officer.[3]  (Kean Aff. ¶ 9.)  Kean then determined that he would continue to wear the jacket in public, because, "[he] had a right to do so, not because [he] intended to be recognized as a police officer."  (Kean Aff. ¶ 9.)

Officer Biron documented the encounter with Kean and radioed police dispatch, sending a broadcast message to other MPD officers that Kean was wearing a police jacket and that if Kean continued to wear the jacket, he could be arrested for false personation.  (Biron Dep. 27:7-9; 29:12-15; 31:3-7.)  Finally, Biron emailed Captain Robert Cunha, who was at that time the head

_____

[3]     The New Hampshire false personation statute provides that:

> Any person who knowingly and falsely assumes or exercises the functions, powers, duties, or privileges incident to the office of sheriff, deputy sheriff, state police officer, police officer of any city or town, or any other law enforcement officer or investigator employed by any state, country or political subdivision of a state or country, or who wears or displays without authority any uniform, badge, or other identification by which such sheriff, officer, or investigator is lawfully identified, and with the intent to be recognized as such, shall be guilty of a class B felony.

N.H. Rev. Stat. Ann. § 104:28-a.

of the MPD Legal Division, requesting information on the false personation statute. (Biron Dep. 27:7-28:7.)  Captain Cunha promptly sent Biron the language of the statute, noting, "The challenge . . . would be proving the intent to be recognized as a police officer." (Obj. to Summary Judgment, Exhibit 6.)  Biron did not modify the message he had broadcast to the other officers.  Biron thought that if Kean continued to wear the jacket after he had been informed that he had been mistaken for a police officer and of "the dangers associated with that," and after being warned not to wear the jacket for those reasons, Kean "would have satisfied the intent element of the statute." (Biron Dep. 36:9-16; 37:5-23.)

The outside temperature the next day was 80 degrees, with 62 percent humidity. (Mot. for Summary Judgment, Exhibit B ("McKenney Aff.") ¶ 2.)  Nevertheless, Kean again donned the police jacket to walk from his home to the local convenience store. (Kean Aff. ¶ 10.)  As he had the day before, Kean wore the jacket unbuttoned, with jeans, a t-shirt bearing his company's name, and work boots. (Id.)  Officer Kelly McKenney saw Kean walking on Kelley Street.  She had heard Officer Biron's dispatch about Kean the day before, and recognized the jacket as having been issued by the Department in the past. (Obj. to

Summary Judgment, Exhibit B ("McKenny Dep.") 30:2-20-31:1-6.)

She also noted the warm weather conditions.  (Id. at 29:5-8.)

Officer McKenney followed Kean into the convenience store and asked if he was Christopher Kean.  (Kean Aff. ¶ 11.)  When Kean responded that he was, McKenney placed him under arrest for "false personation," (known colloquially as "impersonating a police officer") in violation of RSA 104:28-a. (Id.)  Kean protested, to no avail, that his attorney told him that he had the right to wear the jacket. (Kean Aff. ¶ 11.)

The charges against Kean were initially dismissed in the Manchester district court, but a Hillsborough County grand jury returned an indictment charging him with a single count of violating RSA 104:28-a.  Prior to trial, Kean moved to suppress evidence – the jacket – arguing that his arrest was not supported by probable cause, so the jacket was unlawfully seized.  (Mot. for Summary Judgment, Exhibit 4, p. 1.)  Following a hearing, the court denied Kean's motion to suppress, finding that the "undisputed facts establish that Officer McKenney had probable cause to arrest" Kean. (Id. at p. 5.)  The case was tried, and Kean was acquitted.

Kean then moved for return of his jacket.  See State v. Kean, 122 A.3d 982, 983 (N.H. 2015).  Following a hearing, the state court found that the jacket and the patch were "at all times the property of the City of Manchester," in light of a "Manchester Police Department policy in place that required [such uniform] items to be 'turned in' upon discontinuation or upon the retirement of an officer." Id. at 983, 984-95.  The court nevertheless ordered the jacket to be returned to Kean, albeit with the patch removed from the sleeve.  Id.  Kean appealed that decision to the New Hampshire Supreme Court, which affirmed the trial court's determination that Kean had no ownership interest in the jacket, and also held that the trial court had erred in ordering that the jacket be returned to Kean after removal of the patch.  Id. at 985-85.

Remaining in this civil suit are Kean's Section 1983 claims for retaliatory and unlawful arrest, in violation of the First and Fourth Amendments respectively, and a municipal liability claim.  He also advances state law claims for false imprisonment and unlawful arrest, vicarious liability (related to the false imprisonment and unlawful arrest claims) against the City of Manchester and Chief of Police, and a negligent training and supervision claim against the City of Manchester and the Chief of Police.  Defendants argue that they are entitled to summary

judgment on all remaining claims because Kean's arrest was supported by probable cause, and, alternatively, because defendants are protected by qualified immunity as well as various state law immunities.

## Discussion

I.  <u>Wrongful Arrest (Count IV)</u>

    A.  Probable Cause

According to Kean, Officer McKenney violated his Fourth Amendment rights by arresting him without probable cause to believe that he had violated New Hampshire's false personation statute.  More specifically, Kean argues that Officer McKenney did not have probable cause to believe that Kean intended to be recognized as a police officer, an essential element of the criminal offense.

Kean made a similar argument in his motion to suppress evidence before the state superior court, contending that "his arrest was unlawful because Officer McKenney did not have probable cause to believe defendant had the specific intent to be recognized as a police officer."  (Mot. for Summary Judgment, Exhibit 4, p. 3.)  The superior court held a hearing on the motion, at which Officer Biron testified.  Following the hearing, the trial court issued a well-reasoned decision denying Kean's

motion to suppress, finding that Officer Biron's testimony was

"credibl[e] and persuasive[]" and that Officer McKenney did have

probable cause to believe Kean intended to be recognized as a

police officer, and so, to arrest him.  (See id. at pp. 3-5.)


     Federal courts are bound by state law with respect to the

preclusive effect to be given state judgments.  Bryant v.

Noether, 163 F. Supp. 2d 98, 107 (D.N.H. 2001).  "The New

Hampshire doctrine of collateral estoppel 'bars a party to a

prior action from relitigating any issue or fact actually

litigated and determined in the prior action' so long as '(1) the

issue subject to estoppel is identical in each action; (2) the

first action resolved the issue finally on the merits; and (3)

the party to be estopped appeared as a party in the first

action.'"  Katz v. McVeigh, 931 F. Supp. 2d 311, 321 (D.N.H.

2013) (quoting In re Michael E., 162 N.H. 520, 523-24 (2011)

(modifications omitted)).


     Kean preemptively argues that he is not collaterally

estopped from renewing his probable cause argument again in this

court, because "the Superior Court's Order was not a final

judgment on the merits."  (Mem. in Supp. of Obj. to Summary

Judgment, p. 12.)  He argues that, because he was acquitted, the

Superior Court's order denying the motion to suppress, or finding

probable cause, was not appealable, so cannot constitute a "final judgment."

The superior court's order meets the first and third conditions of New Hampshire's requirements for application of its collateral estoppel doctrine. But, whether that order resolved the probable cause issue "finally on the merits" is probably debatable.[4] But defendants, who would bear the burden of showing that the requirements of collateral estoppel are met, are not seeking its application. Instead, they merely assert that the superior court's order "casts doubt" on Kean's claim that there

---

[4]     See N.H. Sup. Ct. R. 94 ("Objections to the Court's ruling in advance of trial admitting the evidence shall be transferred on appeal after trial and not in advance of trial except in the discretion of the Court in exceptional circumstances."); see also Johnson v. Watkins, 101 F.3d 792, 793 (2d Cir. 1996) ("The issue raised is whether collateral estoppel bars plaintiff from proving his case where probable cause to arrest him was preliminarily determined at a suppression hearing, despite his later acquittal at trial. Key to the use of collateral estoppel in civil litigation is whether there was a full and fair opportunity to litigate an issue already decided adversely to one party. Central to a full opportunity to litigate is whether appellate review of an adverse holding was available. If not, full and fair litigation was absent and collateral estoppel does not apply. Since here plaintiff had no opportunity to appeal the finding of probable cause, the doctrine of collateral estoppel does not bar suit.") (applying New York law); but see Thompson v. Mueller, 976 F. Supp. 762, 766 (N.D. Ill. 1997) (finding that collateral estoppel barred re-litigation of probable cause determination in civil action, despite plaintiff's acquittal, which precluded appellate review of the state trial judge's probable cause determination, where the issue was throughly litigated) (applying Illinois law).

was no probable cause for his arrest.  (Reply Br. in Supp. of
Summary Judgment, p. 4.)

Because defendants do not assert a collateral estoppel bar,
there is no occasion to grapple with Kean's argument that the
superior court's order does not resolve the point.  In any event,
the undisputed facts here compel the same conclusion reached by
the superior court.  Probable cause existed for Kean's arrest.

"An officer may conduct a warrantless arrest as long as
there is 'probable cause to believe that the suspect has
committed or is committing a crime.'"  United States v. Link, 238
F.3d 106, 109 (1st Cir. 2001) (quoting United States v. Bizier,
111 F.3d 214, 216-217 (1st Cir. 1997) (additional citations
omitted)).  Probable cause "exists if, at the time of the arrest,
the collective knowledge of the officers involved was 'sufficient
to warrant a prudent person in believing that the defendant had
committed or was committing an offense.'"  Id. (quoting Bizier,
111 F.3d at 217).  "In determining whether the officer had
probable cause, [the court] must view the circumstances from the
perspective of a reasonable person in the position of the
officer."  Holder v. Town Of Sandown, 585 F.3d 500, 504 (1st Cir.
2009).  "'The test for probable cause does not require the
officers' conclusion to be ironclad, or even highly probable.

12

Their conclusion that probable cause exists need only be
reasonable.'" Id. (quoting Acosta v. Ames Dept. Stores, 386 F.3d
5, 11 (1st Cir. 2004).

As stated, "it is the collective knowledge of the officers
involved, not the individual knowledge of the arresting officer,
that is the subject of the probable cause inquiry." Giroux v.
Town of Danbury, No. CIV. 06-CV-250-PB, 2008 WL 150655, at *5
(D.N.H. Jan. 15, 2008) (citing U.S. v. Pardue, 385 F.3d 101, 106
(1st Cir. 2004) (emphasis added); see also Morelli v. Webster,
552 F.3d 12, 17 (1st Cir. 2009) ("when an officer who has
probable cause directs an officer who lacks that knowledge to
make the arrest, we impute to the arresting officer the directing
officer's knowledge") (quotations and citations omitted).
Therefore, Kean's "arrest is valid if the collective knowledge of
all the officers involved establishes probable cause for his
arrest." Giroux, 2008 WL 150655, at *5.

New Hampshire's false personation statute reads, in
pertinent part:

> Any person who knowingly and falsely . . . wears or
> displays without authority any uniform, badge, or other
> identification by which such sheriff, officer, or
> investigator is lawfully identified, and with the
> intent to be recognized as such, shall be guilty of a
> class B felony.

N.H. Rev. Stat. Ann. § 104:28-a.  Kean violated the false

personation statute if: (1) he was wearing "any uniform, badge or

other identification" by which the MPD was "lawfully identified;"

and (2) he intended to be recognized as an MPD officer.  <u>Id</u>.


The parties do not dispute that, on September 5, 2012, Kean

was knowingly wearing an official but discontinued MPD jacket

with a current MPD patch affixed to the left shoulder.  And,

given the undisputed facts, a reasonable police officer could

have concluded under the circumstances that Kean intended to be

recognized as a police officer.  Significantly, (1) Kean was

informed by Officer Biron on September 4 that Biron had actually

mistaken Kean for a police officer because he was wearing a

police-issued jacket with an official patch;[5] (2) Officer Biron

warned Kean that people were likely to confuse him for a police

officer because of the jacket, and that he could be arrested for

---

[5]     Kean argues that it was not reasonable for Officer
Biron to mistake him for a police officer, pointing out that: (1)
he was not performing any police functions; (2) he was wearing
civilian clothing underneath the jacket, which is against MPD
policy; and (3) McKenney testified that it would be unusual for
an MPD officer to wear the winter jacket in hot weather.  (<u>See</u>
Mem. in Supp. of Obj. to Summary Judgment, p. 9.)  But, the false
personation statute does not require that an individual be
"reasonably mistaken" for a law enforcement officer.  <u>See</u> N.H.
Rev. Stat. Ann. § 104:28-a.  Indeed, Kean himself makes the
point.  (<u>See</u> Mem. in Supp. of Obj. to Summary Judgment, p. 7, n.6
("The statute requires that [Kean] have had the intent to be
recognized as a police officer, not that other people perceive
him to be one.")).

false personation if he continued to wear the jacket; and (3) despite being told by a police officer that he was likely to be mistaken for a police officer if he continued to wear the jacket. In fact, Kean wore the heavy jacket the very next day in 80 degree heat. Since the weather was inconsistent with the normal wear of a heavy jacket, a reasonable officer might conclude that some other purpose was motivating Kean.

In other words, as the superior court stated, "[d]espite being mistaken by [Officer] Biron for a police officer, and therefore being put on notice of possible confusion, defendant insisted on continuing to wear the jacket, apparently for no practical purpose." (Mot. for Summary Judgment, Exhibit 4, p. 4.) It is of course true that Kean could well have intended, as he says, nothing more than to exercise what he believed to be his right to display an item from his collection of police memorabilia, or, any number of other innocent purposes for that matter. But, it is equally true that a reasonable police officer could have construed Kean's actions as evincing a continuing intent to impersonate an officer (e.g., an off-duty officer) in disregard of the earlier caution. As this court has previously noted, "the inferences the officers drew from the facts available to them . . . need not have been correct; they need only have been reasonable." Toney v. Perrine, No. CIV 06-CV-327-SM, 2007

WL 2688549, at *5 (D.N.H. Sept. 10, 2007). Officer McKenney's conclusion – based on her own observations and the imputed knowledge of Officer Biron – that Kean was engaged in a violation of the false personation statute was objectively reasonable, even if incorrect, and she had probable cause to arrest Kean.

To support his argument that Officer McKenney lacked probable cause, Kean points to: (1) McKenney's testimony at deposition that she did not know Kean's intentions when she saw him wearing the jacket; and (2) Kean's statement to McKenney at arrest indicating that he did not intend to be recognized as a police officer. Neither point is determinative.

As a preliminary matter, Kean misconstrues Officer McKenney's testimony. After making the unremarkable and obvious point that she could not have definitively known Kean's subjective mental state, or intent, when he was arrested, McKenney testified that she believed Kean intended to be recognized as a police officer because "[h]e was advised the day before by Officer Biron that he could be misinterpreted as a police officer if he wore the jacket." (McKenney Dep. 44:22-23 – 45:1-5.) Continuing to wear the jacket, while not conclusive evidence of an intent to impersonate, certainly gave rise to a reasonable inference of Kean's intent to impersonate.

16

But, even if Officer McKenney's testimony supported Kean's argument, her subjective belief is not dispositive of whether probable cause existed.  This is because the probable cause inquiry is an objective one: "actual motive or thought process of the officer is not plumbed."  Holder v. Town of Sandown, 585 F.3d at 504.  Here, the underlying facts support a conclusion that a reasonable officer would find it likely that Kean's conduct evinced a continuing intent to violate the false personation statute.

As to Kean's second point, McKenney was not obligated to credit Kean's statement at arrest.  Indeed, "[i]t would be nearly impossible for the police to carry out an arrest if the suspect's mere denials were enough to extinguish probable cause, especially in the face of otherwise credible victim testimony and corroborating evidence."  Holder v. Town of Newton, No. CIV. 08-CV-197-JL, 2010 WL 432357, at *4 (D.N.H. Feb. 3, 2010); cf. Cox v. Hainey, 391 F.3d 25, 34 (1st Cir. 2004) ("the practical restraints on police in the field are greater with respect to ascertaining intent and, therefore, the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great.").  As discussed, there are sufficient undisputed facts contradicting Kean's statement that he did not intend to be recognized as a police

17

officer to support a reasonable officer's conclusion that Kean did intend to impersonate an officer.

Because probable cause existed for Kean's arrest, his warrantless arrest was lawful.  Defendants are, therefore, entitled to summary judgment on Kean's Section 1983 wrongful arrest claim.

B.   Qualified Immunity

Even if probable cause was absent, so long as the issue was arguable or subject to legitimate question, Officer McKenney would be entitled to qualified immunity.

Qualified immunity "protects public officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Cox v. Hainey, 391 F.3d at 29 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  A "defendant 'is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest.'"  Id. at 31 (quoting Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992)).  Therefore, "in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach," and "suit may go forward only if

18

the unlawfulness of the arrest would have been apparent to an objectively reasonable officer standing in [Officer McKenney's] shoes." Id. (citations omitted). See also Glik v. Cunniffe, 655 F.3d 78, 88 (1st Cir. 2011) ("Officers are entitled to qualified immunity 'so long as the presence of probable cause is at least arguable.'" (quoting Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992) (additional quotations omitted)).

Given the record, the existence of probable cause was, at the very least, arguable. Indeed, that conclusion is buttressed by the superior court's finding, following an evidentiary hearing, that probable cause existed. If the superior court judge found probable cause, surely an objectively reasonable officer could have found the issue to be, at the very least, "arguable." It simply cannot be said that a reasonable officer in McKenney's shoes would have understood that arresting Kean would violate his Fourth Amendment rights. So, even if probable cause was lacking, Officer McKenney would still be entitled to qualified immunity from Kean's Fourth Amendment claim.

II.  Retaliatory Arrest (Count II)

A.   Violation of First Amendment Rights

Kean says he wore the police jacket as an exercise of his First Amendment right to "expressive conduct." He says that he

19

explained to Officer McKenney that he was wearing the jacket
"because his attorney told him he could, and that he liked to
wear the jacket," and that McKenney arrested him "solely because
he was wearing the jacket." (Mem. in Supp. of Obj. to Summary
Judgment, pp. 10, 14.)

To prevail on a First Amendment retaliation claim based upon
a law enforcement officer's actions during an arrest, Kean must
first show that he was engaged in activity protected by the First
Amendment. Gericke v. Begin, 753 F.3d 1, 6 (1st Cir. 2014)
("plaintiff's activity must be constitutionally protected in
order to bring a section 1983 claim of First Amendment
retaliation."). Next, Kean must "'show that the officer's intent
or desire to curb the expression was the determining or
motivating factor" for her actions, "in the sense that the
officer would not have [taken those actions] 'but for' that
determining factor.'" Traudt v. Roberts, No. 10-CV-12-JL, 2013
WL 3754862, at *12 (D.N.H. July 15, 2013) (quoting Tatro v.
Kervin, 41 F.3d 9, 18 (1st Cir. 1994)) (emphases removed).

"In evaluating whether allegedly expressive conduct brings
the First Amendment into play, the Supreme Court has focused on
the context in which the conduct took place, asking 'whether [a]n
intent to convey a particularized message was present, and

20

[whether] the likelihood was great that the message would be understood by those who [perceived] it.'" Meaney v. Dever, 326 F.3d 283, 287 (1st Cir. 2003) (quoting Texas v. Johnson, 491 U.S. 397, 404 (1989)).  Kean says his "intended expression was that he was wearing the jacket because his attorney told him he could, and that he liked to," and that he "collected police memorabilia and that he liked to display the same."  (Mem. in Supp. of Obj. to Summary Judgment, pp. 10-11.)  Even assuming Kean meant to convey a "particularized message," which is doubtful, it still seems highly unlikely that anyone who saw Kean wearing the jacket could possibly understand his intended message – that he liked to display police memorabilia by wearing it, or that he was wearing the police jacket because he thought he could.  People who saw Kean wearing the jacket more likely would conclude, as Officer Biron had, that he was an officer associated with the Manchester Police Department.

Nevertheless, even accepting Kean's point that wearing the jacket qualifies as protected First Amendment activity, he fails to point to any facts that would support a conclusion that his arrest was motivated by Officer McKenney's desire to curb that legitimate expression.  To the contrary, the undisputed facts establish that Kean was arrested not "solely because he was wearing the jacket" (Mem. in Supp. of Obj. to Summary Judgment,

21

p. 14), but because his wearing the jacket was thought by Officer McKenney to be unlawful (i.e., false personation of a police officer). "I am a Manchester police officer" is certainly one message likely conveyed or implied by Kean's wearing the police jacket, and that is not a message protected by the First Amendment when it is false.

The only facts Kean points to in support of his claim of retaliatory animus are his own declarations of intent made to Officer McKenney and Officer Biron. But, Kean's exculpatory disclaimers do not suggest that Officer McKenney intended to suppress some legitimate expression. As already noted, Officer McKenney could have concluded that Kean's statements about his intentions were not credible, given the circumstantial evidence to the contrary. See Robinson v. Cook, 706 F.3d 25, 37 (1st Cir.) cert. denied, 133 S. Ct. 2831, 186 L. Ed. 2d 885 (2013) ("a reasonable police officer need not credit a suspect's self-serving statements."); see also Toney v. Perrine, 2007 WL 2688549, at *4 ("Importantly, the officers were not required to believe [plaintiff's] self-serving explanation for his seemingly suspicious behavior. 'A reasonable police officer is not required to credit a suspect's story.'") (quoting Cox v. Hainey, 391 F.3d at 32 (citing Brady v. Dill, 187 F.3d 104, 112 (1st Cir. 1999))); Paff v. Kaltenbach, 204 F.3d 425, 437 (3d Cir. 2000)

("Absent a confession, the officer considering the probable cause
issue in the context of crime requiring a mens rea on the part of
the suspect will always be required to rely on circumstantial
evidence regarding the state of his or her mind . . . we find
nothing in the probable cause jurisprudence that makes it
apparent that [the arresting officer] was required to accept that
assertion at face value.").

Because Kean has failed to present credible evidence that
his arrest was motivated by Officer McKenney's desire to curb
protected speech, the defendants are entitled to summary judgment
on Kean's retaliatory arrest claim.

B.   Qualified Immunity

Again, however, even if Kean had presented credible evidence
supporting his First Amendment claim, Officer McKenney would
still be entitled to qualified immunity.

"When a defendant invokes qualified immunity, 't]he
plaintiff bears the burden of demonstrating that the law [the
defendant purportedly violated] was clearly established at the
time of the alleged violation.'"   Dixon v. City of Somersworth,
No. 14-CV-397-LM, 2015 WL 5823963, at *3 (D.N.H. Oct. 5, 2015)
(quoting Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015))

(additional citations omitted). To meet this burden, the
plaintiff must "identify controlling authority or a robust
consensus of persuasive authority such that any reasonable
official in the defendant's position would have known that the
challenged conduct is illegal in the particular circumstances
that he or she faced – then-existing precedent, in other words,
must have placed the statutory or constitutional question beyond
debate." Rivera-Corraliza v. Morales, 794 F.3d 208, 214-15 (1st
Cir. 2015) (citations and internal punctuation omitted).

Kean has not sufficiently identified any "controlling
authority or robust consensus of persuasive authority" suggesting
that, in September of 2012, it was clearly established that he
had a right to be free from a retaliatory arrest that is also
based upon probable cause. See generally Reichle v. Howards, 132
S. Ct. 2088, 2094 (U.S. 2012) (noting that the Court has never
recognized a "specific right to be free from a retaliatory arrest
that is otherwise supported by probable cause"). As noted,
Kean's arrest for false personation of a police officer was
supported by probable cause. Consequently, even if Kean could
have demonstrated that his arrest violated his First Amendment
rights, Officer McKenny would be entitled to the protections
afforded by qualified immunity on Kean's retaliation claim.

IV.  <u>Municipal Liability for Constitutional Violation (Count VI)</u>

Kean argues that the City of Manchester is liable for Officer McKenney's purported constitutional violations because it failed to train its officers with respect to the false personation statute.  Because Officer McKenney did not violate Kean's First and Fourth Amendment rights, the City of Manchester cannot be liable for having maintained an allegedly unconstitutional policy regarding officer training.  As the Supreme Court has observed:

> [N]either <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.  If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

<u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (emphasis in original).  <u>See</u> <u>also</u> <u>Calvi v. Knox County</u>, 470 F.3d 422, 429 (1st Cir. 2006) ("We need not probe this point too deeply for — regardless of the training afforded or the lack of training — it is only when a governmental unit's employee inflicts a constitutional injury that the governmental unit can be held liable under section 1983.  It follows that the inadequate training of a police officer cannot be a basis for municipal

25

liability under section 1983 unless a constitutional injury has been inflicted by the officer or officers whose training was allegedly inferior.") (citations omitted).

Defendants are, therefore, entitled to summary judgment on Kean's municipal liability claim.

IV.   Plaintiff's State Common Law Claims

Having concluded that defendants are entitled to judgment as a matter of law on all of Kean's federal claims, the court must determine whether it is appropriate to exercise supplemental jurisdiction over his remaining state law claims.   See generally 28 U.S.C. § 1367.   Section 1367 provides that the court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

(1)   the claim raises a novel or complex issue of State law,

(2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)   the district court has dismissed all claims over which it has original jurisdiction, or

(4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied).   To assist district courts, the Court of Appeals for the First Circuit has identified

26

the following additional factors that should be considered when
determining whether to exercise supplemental jurisdiction over
state law claims: (1) the interests of fairness; (2) judicial
economy; (3) convenience; and (4) comity. See Camelio v.
American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). And, with
regard to principles of fairness and comity, the Supreme Court
has observed:

> Needless decisions of state law should be avoided both
> as a matter of comity and to promote justice between
> the parties, by procuring for them a surer-footed
> reading of applicable law. Certainly, if the federal
> claims are dismissed before trial, even though not
> insubstantial in a jurisdictional sense, the state
> claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote
omitted). See also Carnegie-Mellon Univ. v. Cohill, 484 U.S.
343, 350 n.7 (1988) ( "[I]n the usual case in which all
federal-law claims are eliminated before trial, the balance of
factors to be considered under the pendent jurisdiction doctrine
— judicial economy, convenience, fairness, and comity — will
point toward declining to exercise jurisdiction over the
remaining state-law claims."); Rivera-Diaz v. Humana Ins. of
P.R., 748 F.3d 387, 392 (1st Cir. 2014) (upholding district
court's decision declining to exercise supplemental
jurisdiction).

Given that all federal claims in Kean's complaint are resolved, and taking into account the factors identified in Camelio, the court declines to exercise supplemental jurisdiction over Kean's state law claims.

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' memoranda, defendants' motion for summary judgment (docket no. 10) is granted in part.  Judgment shall be entered in favor of the defendants on counts two, four and six.  The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, which are dismissed without prejudice.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 4, 2016

cc:  Stephen T. Martin, Esq.
     Robert J. Meagher, Esq.

28